IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN JOSEPH OTROMPKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 C 7847 |
| LAWRENCE HILL, President of the Illinois ) | |
| Board of Admissions to the Bar, in his official ) | |
| capacity, and LISA MADIGAN, Illinois ) | |
| Attorney General, in her official capacity ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On November 1, 2013, plaintiff John Joseph Otrompke ("Otrompke") filed a complaint (Dkt. No. 1.) against Lawrence Hill ("Hill"), the President of the Illinois Board of Admissions to the Bar, and Lisa Madigan ("Madigan"), the Illinois Attorney General (collectively, "Defendants"), alleging that certain past and present Illinois Bar Admission Rules and Illinois Supreme Court Rules violate his First, Fifth, and Fourteenth Amendment rights. On December 31, 2013, Hill filed a motion to dismiss (Dkt. No. 10) Otrompke's claims against Hill, and on January 3, 2014, Madigan filed a motion to dismiss (Dkt. No. 13) Otrompke's claims against Madigan. On January 16, 2014, the court granted (Dkt. No. 20) Otrompke's motion to file an amended complaint (Dkt. No. 17). Otrompke filed his first amended complaint ("Amended Complaint") (Dkt. No. 22 ("Am. Compl.")) and Defendants have renewed their motions to dismiss (Dkt. Nos. 24, 26) all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons explained below, Defendants' motions are granted.

## BACKGROUND

In 2000, Otrompke graduated from DePaul University College of Law and passed the Illinois bar examination and its component parts, including the Multistate Professional Responsibility Exam. (Am. Compl. ¶ 2.) Although Otrompke completed these requirements more than thirteen years ago, he is not licensed to practice law in Illinois. (Am. Compl. ¶¶ 1, 3.) In October 2003, while his application for admission to the bar was pending before the Committee on Character and Fitness for the First Judicial District of Illinois ("Committee"), Otrompke sued the Committee, along with several members of a panel of that Committee, and the Illinois Board of Admissions to the Bar. *Otrompke* v. *Chairman of Comm. on Character & Fitness*, No. 03 C 7198, 2004 WL 812993, *2 (N.D. Ill. April 14, 2004) (Kennelly, J.) ("*Otrompke I*"). Otrompke claimed the defendants' failure to approve his admission to the bar and their delay in granting him a hearing violated his rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution. *Id.* at *1. The district court concluded that the Illinois Supreme Court, which is the final arbiter of attorney admissions in Illinois, had the ability to hear and determine Otrompke's federal claims. *Id.* at *3-5. Consequently, the court determined that *Younger* v. *Harris*, 401 U.S. 37 (1971) its progeny required the court to abstain from considering the merits of Otrompke's claims. *Id.* at *5. But because Otrompke also alleged a damages claim for violation of procedural due process—a claim that could not be litigated in connection with his application for admission—the court decided to stay the case rather than dismiss it. *Id.* at *5.

The Committee ultimately recommended that Otrompke not be certified for admission, and the Illinois Supreme Court denied his petition for review. (Am. Compl. ¶ 4.) The defendants

then moved to dismiss pursuant to the *Rooker-Feldman* doctrine, arguing the district court had no jurisdiction to review a state court judgment denying Otrompke admission to the bar. The district court granted the defendants' motion, except with respect Otrompke's procedural due process claim. *Otrompke* v. *Chairman of Comm. on Character & Fitness*, No. 03 C 7198 (N.D. Ill. Nov. 16, 2004) (Kennelly, J.) (Dkt. No. 41). In a subsequent ruling, however, the court suggested that *Rooker-Feldman* might not apply to Otrompke's claims in light of the U.S. Supreme Court's clarification of the doctrine in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280 (2005). *See Otrompke* v. *Chairman of Comm. on Character & Fitness*, No. 03 C 7198, 2005 WL 1126914, *2 (N.D. Ill. May 12, 2005) (Kennelly, J.) ("*Otrompke II*") (questioning *Rooker-Feldman* determination made in the November 16, 2004 order).

Before issuing its opinion in *Otrompke II*, the court had also granted Otrompke leave to file an additional claim seeking a declaration of the unconstitutionality of Illinois Supreme Court Rules 708(b) and 710, as well as Illinois Bar Admission Rules 4.2, 4.3, 9.1, and 9.2. In *Otrompke II*, the court ruled that to the extent the additional claim challenged the application of the rules to Otrompke, it was barred by claim preclusion, and to the extent it challenged future application, it failed to state a claim. *Otrompke II*, 2005 WL 1126914, at *2-4.

In its final decision in Otrompke's original lawsuit, the district court granted the defendants summary judgment on all of Otrompke's remaining claims. The court held that even if its previous *Rooker-Feldman* ruling was incorrect, Otrompke's claims attacking the denial of his application for admission were nonetheless barred by the doctrine of claim preclusion because he could have and should have raised his federal constitutional challenges in the state

3

proceeding. *Otrompke* v. *Chairman of Comm. on Character & Fitness*, No. 03 C 7198, 2005 WL 3050618, *2 (N.D. Ill. Nov. 7, 2005) (Kennelly, J.) ("*Otrompke III*"). The court also rejected Otrompke's procedural due process claim, which it initially declined to dismiss on *Rooker-Feldman* grounds. The court determined that because the defendants were acting under the authority of the Illinois Supreme Court—the ultimate arbiter of attorney admissions—they were entitled to absolute immunity from suits for damages. *Otrompke III*, 2005 WL 3050618, at *2. Because the district court resolved Otrompke's claims on the basis of claim preclusion and judicial immunity, the court did not revisit the application of *Rooker-Feldman* in light of *Exxon Mobil*. *Id.* at *2.

Otrompke did not appeal the district court's summary judgment ruling because, among other reasons, Otrompke's fiancée at the time received a diagnosis of terminal leukemia. (Am. Compl. ¶¶ 7-8.) Nor did he re-apply for admission to the bar because "it could cost thousands of dollars even to complete the bar application," and defendants would again argue "that *Younger*, res judicata, and *Feldman* preclude relief." (Dkt. No. 29 ("Pl.'s Resp.") at 14.) Instead, ten years after filing his initial lawsuit in federal court and eight years after the district court's summary judgment ruling, Otrompke filed this lawsuit seeking (1) a declaration that the "Illinois bar admission statute(s) and rule(s) [are] unconstitutional, in violation of the Bills of Attainder clause, and the First, Fifth and Fourteenth Amendments of the U.S. Constitution," (Am. Compl. at 1), and (2) an order admitting him to the Illinois Bar (Am. Compl. Prayer for Relief).

Otrompke's new allegations are set forth in three distinct sections of his Amended Complaint: (1) "New Law and Facts After 2000"; (2) "Prior Issues Still Alive and Susceptible to

4

Challenge"; and (3) "New Paragraphs First Amended Complaint." (Am. Compl. ¶¶ 10-78.) These sections roughly track Otrompke's discernable claims, which attack the constitutionality of Illinois's Bar Admission and Illinois Supreme Court Rules before and after his application was rejected in 2004.

First, Otrompke claims a number of rules enacted or amended since his original lawsuit (the "2014 Rules") violate his fundamental right to practice law, (Am. Compl. ¶ 22), and are unconstitutionally vague, overbroad, and "underbroad" (*id.* ¶¶ 38, 80). These rules are Illinois Bar Admission Rules 6.3, 6.4, 9.1, 10.2, 13[1] and Illinois Supreme Court Rules 708(c) and 704(b). (Am. Compl. ¶¶ 10-16, 79.) Otrompke also claims two of these new rules—Bar Admission Rules 9.1 and 10.2—"imply that the Fifth Amendment privilege against self-incrimination [does] not apply to bar admissions proceedings." (*Id.* ¶ 17.)

Second, Otrompke asserts the proceedings and rules to which he was originally subjected (the "2004 Rules") violated his rights under the First and Fourteenth Amendments of the United States Constitution. (Am. Compl. ¶¶ 28-58.) Otrompke also contends the 2004 Rules interfered with his fundamental right to practice law, in violation of the Fourteenth Amendment and Article I, Sections 9-10 of the United States Constitution (the "Bills of Attainder Clauses"). (Am.

---

[1] Otrompke does not specifically cite Illinois Bar Admission Rule 13. In the final section of his Amended Complaint, however, Otrompke quotes from an uncited "Bar Admission Rule," which happens to be Illinois Bar Admission Rule 13.3. (Am. Compl. ¶ 79); *see* Illinois Bar Admission Rules, Illinois Board of Admissions, https://www.ilbaradmissions.org/getpdfform.action?id=1100 (last visited Mar. 19, 2014). Otrompke also states the rules "pertaining to [the] two-year re-application are unconstitutionally vague, overbroad, and underbroad." (Am. Compl. ¶ 80.) The Bar Admission rules pertaining to the two-year rehearing period are 13.1, 13.2, 13.3, and 13.4.

Compl. ¶¶ 18-21, 29, 39.) Otrompke states he did not raise his "fundamental right" claim in his first federal lawsuit or his state proceeding because he was not aware that the Constitution established a fundamental right to practice a profession. (*Id.* ¶ 29.)

The third section of Otrompke's Amended Complaint, titled "New Paragraphs First Amended Complaint," includes a number of facts apparently intended to prove Otrompke's good moral character. These facts include Otrompke's cooperation with federal authorities investigating a mail bomber named the "Bishop," (Am. Compl. ¶ 59), Otrompke's cooperation with a state prosecutor in an unrelated case (Am. Compl. ¶ 66), and a lengthy explanation of Otrompke's involvement with a group called Anti-Racist Action (Am. Compl. ¶¶ 60-65, 73). This section of Otrompke's Amended Complaint contains no discernible claims. Otrompke appears instead to be seeking a finding from this court that he has good moral character in light of acts undertaken since the conclusion of his first federal lawsuit.

Defendants Hill and Madigan have both moved to dismiss Otrompke's Amended Complaint. (Dkt. Nos. 24, 26.) Hill contends the Amended Complaint should be dismissed: (i) for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (ii) because Otrompke's claims are precluded by res judicata; (iii) because Otrompke fails to state a claim on which relief can be granted; and (iv) because the statute of limitations applicable to Otrompke's claims expired before he filed suit. (Dkt. No. 25 ("Hill Mem.") at 4-8.) Madigan adopts Hill's bases for dismissal and asserts the Eleventh Amendment bars claims against her because she is not a proper defendant to this action. (Dkt. No. 26 ("Madigan Mem.") at 4.)

LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley* v. *Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole* v. *Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice* v. *Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

ANALYSIS

I. Otrompke's Claims Against the 2004 Rules

Because it is jurisdictional, this court must first consider whether the *Rooker-Feldman* doctrine bars some or all of Otrompke's claims. *Rooker-Feldman* "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Lance* v. *Dennis*, 546 U.S. 459, 460 (2006) (citations omitted). In the Seventh Circuit, *Rooker-Feldman*

bars federal jurisdiction (i) when the federal plaintiff asks the district court to overturn an adverse state judgment and (ii) over claims "inextricably intertwined" with a state court determination. *Brown* v. *Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (citing *Taylor* v. *Fed Nat'l Mortg. Ass'n.*, 374 F.3d 529, 532 (7th Cir. 2004). If a federal claim is inextricably intertwined with a state court judgment and the federal plaintiff could have raised the issue in state court, the claim is barred under *Rooker-Feldman*. *Id.* at 442.

There is no question that *Rooker-Feldman* applies to state bar admission proceedings; *Feldman* itself involved such a proceeding and the Seventh Circuit has repeatedly applied *Rooker-Feldman* to challenges to denials of bar admissions. *See, e.g.*, *Brown*, 668 F.3d 437; *Hale* v. *Comm. on Character & Fitness*, 335 F.3d 678 (7th Cir. 2003); *Edwards* v. *Ill. Bd. of Admissions*, 261 F.3d 723, 728 (7th Cir. 2001). In *Brown*, the most recent case to address the issue, the Seventh Circuit held that when a plaintiff's claims "require a federal district court to review the judicial process followed by [a state supreme court] in deciding the merits of [an applicant's] bar admission application," the claims are inextricably intertwined with the state court proceeding and "fall squarely under *Rooker-Feldman's* jurisdictional bar." *Brown*, 668 F.3d at 442-43. Nor can a plaintiff circumvent *Rooker-Feldman* by pleading his or her claim as a direct challenge to a bar rule, rather than a challenge to its application in the state court proceeding. If the constitutional claims could have been raised in the state court proceeding, the district court does not have subject matter jurisdiction. *Feldman*, 460 U.S. at 483 n.16; *see also Brown*, 668 F.3d at 444 ("[T]he casting of a complaint in the form of a civil rights action, however artful, cannot circumvent *Rooker-Feldman*.").

In Otrompke's original lawsuit, the district court determined that Otrompke's First and Fourteenth Amendment attacks on the Illinois Bar Admission and Illinois Supreme Court Rules could have been raised during the state court proceeding and were thus barred by *Rooker-Feldman*. The district court later questioned its ruling in light of the U.S. Supreme Court's decision in *Exxon Mobil*, which held that *Rooker-Feldman* did not apply to federal actions filed while a state proceeding was still pending. *See Exxon Mobil,* 544 U.S. at 291-92. Because Otrompke filed his original lawsuit before his bar application was ultimately rejected, the district court concluded that *Rooker-Feldman* might not apply. *Otrompke II*, 2005 WL 1126914, at *2. Instead, the district court ruled that to the extent Otrompke challenged the prior application of the rules to him, his claim was barred by the doctrine of claim preclusion; to the extent he challenged future application of the rules, he failed to state a claim upon which relief could be granted.[2] *Id.* at *2-4.

Although Otrompke's constitutional claims against the 2004 Rules are almost certainly precluded by his state court proceeding and his first federal lawsuit, this court need not and cannot reach the preclusion issue unless the court has subject-matter jurisdiction. Unlike Otrompke's first federal lawsuit, which he filed before the conclusion of his state proceeding, Otrompke filed this lawsuit nearly ten years after the Illinois Supreme Court denied him admission to the bar. Otrompke urges this court not to abstain under *Younger* "because there is

---

[2] Otrompke stated that he intended to re-apply to the bar and was entitled to a prospective determination on the 2004 Rules before he initiated another application. The district court agreed and ruled on the merits of Otrompke's constitutional attacks on Illinois Supreme Court Rules 708(b) and 710, as well as Illinois Bar Admission Rules 4.2, 4.3, 9.1, and 9.2. *Otrompke II*, 2005 WL 1126914, at *2.

no pending state court proceeding." (Pl.'s Resp. at 12.) The court agrees. And because there is no pending state court proceeding, the considerations that weighed against applying *Rooker-Feldman* in Otrompke's first federal lawsuit are not present. In other words, without a parallel state proceeding there is no *Exxon Mobil* issue. Because Otrompke could have raised his constitutional claims against the 2004 Rules in his state court proceeding, which has now concluded with a judgment on the merits, his claims are barred under *Rooker-Feldman*.

Otrompke argues that the Bills of Attainders Clauses and two recent U.S. Supreme Court decisions establish a fundamental right to practice law, which he did not raise in his state proceeding or his federal lawsuit. (Am. Compl. ¶¶18-22, 29.) To the extent Otrompke relies on the Bills of Attainders Clauses, *Rooker-Feldman* bars his claim because Otrompke could have and should have made the claim in his state court proceeding. Otrompke alternatively suggests that *District of Columbia* v. *Heller*, 554 U.S. 570 (2009) and *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010) hold that an individual cannot be deprived of a professional license absent a felony conviction or adjudication of insanity. (Am. Compl. ¶¶ 18-22.) As discussed more fully in the court's analysis of Otrompke's claims against the 2014 Rules, *Heller* and *McDonald* address the Second Amendment. Neither case addresses, let alone establishes, a fundamental right to practice law. As such, Otrompke cannot rely on "new law" in *Heller* or *McDonald* for the purpose of circumventing *Rooker-Feldman*.

As set forth above, pursuant to the *Rooker-Feldman* doctrine, this court does not have subject-matter jurisdiction over Otrompke's claims against to the 2004 Rules. Defendants' motions to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(1) must be granted.

II.   Otrompke's Claims Against the 2014 Rules

Otrompke also alleges a number constitutional claims against the 2014 Rules, all of which Defendants argue are barred under *Rooker-Feldman*. As an initial matter, the 2014 Rules, to the extent they modify the standards for admission to the Illinois bar, were not in effect in 2004 and could not have been "inextricably intertwined" with the Illinois Supreme Court's decision to deny Otrompke admission. Furthermore, in its *Feldman* opinion, the U.S. Supreme Court held *Rooker-Feldman* does not bar a federal district court from addressing the validity of a particular rule, so long as the plaintiff does not seek review of the rule's application in his particular case. *Feldman*, 460 U.S. at 486; *see also Exxon Mobil*, 544 U.S. at 280 (affirming the same). As discussed above, plaintiffs occasionally mask an "as applied" challenge as a general attack to avoid the *Rooker-Feldman* jurisdictional bar. That is not the case here, because Otrompke has never subjected himself to any state proceeding based on the 2014 Rules. Otrompke's is a true prospective challenge, which is precisely the type of claim the U.S. Supreme Court held is not barred under *Rooker-Feldman*.

Alternatively, Defendants argue Otrompke's claims are precluded based on the state proceedings in 2004 and the district court's rulings in 2005. Under Illinois law, claim preclusion requires: (1) a final judgment on the merits; (2) the same parties or their privies as the current claims; and (3) the same cause of action as the current claims. *Garcia* v. *Village of Mt. Prospect*, 360 F.3d 630, 635 (7th Cir. 2004). Here, only the third element is at issue. Defendants argue the additions and amendments to the rules during the past decade cannot resurrect Otrompke's claims because the new rules "do not embody any new standard applied to bar applicants." (Hill

Mem. at 6.) Defendants declined, however, to attach a copy of the 2004 Rules or provide any other support for their assertion that the additions and amendments are immaterial. On a motion to dismiss, the court must accept the factual allegations in Otrompke's Amended Complaint as true and must draw all reasonable inferences in Otrompke's favor. *Fednav Int'l Ltd.* v. *Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). Although trivial amendments from year to year do not give rise to an annual cause of action, Otrompke's claims are based on a decade's worth of changes. Some of these changes, as set forth in Otrompke's Amended Complaint, clearly modify the standards for admission. (*See, e.g.*, Am. Compl. ¶¶ 12-13 (summarizing modification to Illinois Supreme Court Rule 704(b) as applied to felony convictions).) Drawing all inferences in Otrompke's favor, it is plausible that the amendments and additions to the rules over the last ten years create a new cause of action. Accordingly, under Illinois law, claim preclusion does not bar Otrompke's prospective challenge to the 2014 Rules.

That, however, does not save Otrompke's claims. Otrompke alleges the 2014 Rules violate his fundamental right to practice law, (Am. Compl. ¶ 22), are unconstitutionally vague, overbroad, and "underbroad" (*id.* ¶¶ 38, 80), and violate his Fifth Amendment right against not to incriminate himself (*id.* ¶ 17.) All of these allegations fail to state a claim upon which relief can be granted.

As discussed in the previous section, Otrompke's assertion that he has a fundamental right to practice law absent a felony conviction or adjudication of insanity has no basis in law. Otrompke purports to rely on a variety of sources, including the Bills of Attainder Clauses, the Magna Carta, the U.S. Supreme Court's rulings in *Heller* and *McDonald*, and the Equal

Protection Clause of the Fourteenth Amendment. (Am. Compl. 18-22, 29-30; Pl.'s Resp. at 1-2.) Otrompke provides no explanation as to how the Bills of Attainder Clause or the Magna Carta supports his fundamental right to practice law. His reliance on *McDonald* appears to be based on the U.S. Supreme Court's summary of the *Slaughter-House Cases*, particularly Justice Field's dissenting opinion that the Privileges or Immunities Clause of the Fourteenth Amendment protects the fundamental "right of every man to pursue his profession without the imposition of unequal or discriminatory restrictions." *McDonald*, 130 S. Ct. at 3029 (citing *Slaughter-House Cases*, 16 Wall. 36, 96-97 (1872) (Field, J., dissenting)). The *Slaughter-House Cases*, of course, held the opposite and do not support a fundamental right to practice law. *Slaughter-House Cases*, 16 Wall. at 78. Finally, Otrompke's Amended Complaint accuses a number of publicly-known lawyers of corruption. (Am. Compl. ¶¶ 25-27.) The accusations are apparently intended to support Otrompke's Equal Protection claim, which he states for the first time in a footnote of his response to Defendants' motions. (Pl.'s Resp. at 12, n.9.) Outside of the accusations, however, Otrompke's Amended Complaint fails to allege any facts showing the 2014 Rules governing admission to the bar have been applied unequally or in a discriminatory fashion.

Ultimately, the U.S. Supreme Court's decision in *Konigsberg* v. *State Bar of California*, 366 U.S. 36 (1960), which Otrompke erroneously contends has been "completely" overruled (Am. Compl. ¶ 70; Pl.'s Resp. at 9), forecloses Otrompke's claim of a right to practice law absent a felony conviction or insanity. In that case, the Court held "[a]ll 50 states, as well as Puerto Rico and the District of Columbia, prescribe qualifications for moral character as preconditions for admission to the practice of law," and that the validity of such requirements

was beyond question. *Konigsberg*, 366 U.S. at 41. Accordingly, the 2014 Rules, which require that applicants meet a standard higher than a felony-free, sane law school graduate, do not violate any fundamental rights secured by any provision of the Constitution.

Otrompke also claims the 2014 Rules are unconstitutionally vague, overbroad, and "underbroad." (Am. Compl. ¶¶ 38, 75, 80.) Otrompke makes these claims, all of which arise under the First Amendment, without any supporting facts or law in his Amended Complaint. The district court warned Otrompke during his first federal lawsuit that "the plaintiff facing a motion to dismiss who makes no effort to explain how he has stated a claim acts at his peril." *Otrompke II*, 2005 WL 1126914, at *4 (citations omitted). Otrompke nonetheless declined to elaborate on his First Amendment claims in his response to Defendants' motions, instead reserving any First Amendment arguments for his "substantive memoranda." (Pl.'s Resp. at 15.) As discussed below, Otrompke's First Amendment claims attacking the 2014 Rules consequently fail for the same reasons they failed in 2005 when he challenged the 2004 Rules. *See Otrompke II*, 2005 WL 1126914, at *4-5.

First, Otrompke's void-for-vagueness challenge to the 2014 Rules fails because he alleges no facts showing the 2014 Rules (1) do not provide fair notice regarding the requirements for admission or (2) are so subjective or unclear that they promote arbitrary or discriminatory enforcement. *Skilling* v. *United States*, 561 U.S. 358, 130 S. Ct. 2896, 2933-34 (2010) (citing *Kolender* v. *Larson*, 461 U.S. 352, 357 (1983)). Second, Otrompke's assertion that the 2014 Rules are overbroad fails because he alleges no facts showing the 2014 Rules are or may be invalid in all their applications. *See Village of Hoffman Estates* v. *Flipside, Hoffman Estates,*

14

*Inc.*, 455 U.S. 489, 494 n.5 (1982). In apparent recognition that the overbreadth doctrine does not apply to commercial speech, Otrompke states that his first federal lawsuit was not "commercial speech," and that the "practice of law does not fall within the general category of commercial speech." (Am. Compl. ¶¶ 73-75.) He does not, however, allege any facts showing the 2014 Rules are in fact overbroad. Finally, Otrompke alleges the 2014 Rules are "underbroad," (*id.* ¶ 80), presumably because the 2014 Rules are not content-neutral. *See R.A.V.* v. *City of St. Paul*, 505 U.S. 377, 417 (1992) (Stevens, J., concurring) (equating "underbroad" question to principle that "content-based regulations are presumptively invalid.") Although content-based regulations are presumptively invalid, *see R.A.V.*, 505 U.S. at 382 (collecting cases), Otrompke has failed to allege any facts showing the 2014 Rules are content-based, or that they otherwise proscribe speech in any way. Consequently, Otrompke's "underbroad" claim, like his other First Amendment allegations, fails to state a claim upon which relief may be granted.

Otrompke's only remaining claim is that Illinois Bar Admission Rules 9.1 and 10.2 "imply that the Fifth Amendment privilege against self-incrimination [does] not apply to bar admission proceedings." (Am. Compl. ¶ 17.) Rule 9.1 provides in relevant part:

> The registrant or applicant shall provide to the member any further information or documentation requested and shall cooperate with any further investigation undertaken by the member.

(Am. Compl. ¶ 15.) Rule 10.2 provides in relevant part:

> The character and fitness registration application of a registrant or applicant who without reasonable explanation has failed to provide requested information or documentation for a period of more than 90 days shall be placed on inactive status.

(*Id.* ¶ 16.) In other words, Otrompke contends that the rules, by requiring him to disclose

15

potentially incriminating information as a prerequisite to being admitted to the bar, violate his Fifth Amendment privilege against self-incrimination. As with his First Amendment challenges, Otrompke declined to describe in his Amended Complaint or response how he states a claim upon which relief may be granted.

The U.S. Supreme Court has held that the privilege against self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Allen* v. *Illinois*, 478 U.S. 364, 368 (1986) (citations omitted). In *Spevack* v. *Klein*, 385 U.S. 511 (1967), the U.S. Supreme Court extended the privilege against self-incrimination to lawyers, forbidding the imposition of the sanction of disbarment as a penalty for remaining silent. 385 U.S. at 516-19. The U.S. Supreme Court and Seventh Circuit, however, have repeatedly upheld rules requiring applicants to bear the burden of proving good character. *See, e.g., Konisberg*, 366 U.S. at 40-41; *Martin-Trigona* v. *Underwood*, 529 F.2d 33, 37 (7th Cir. 1976). Otrompke's facial challenge to Rules 9.1 and 10.2 fails for the simple reason that the rules do not compel self-incrimination; Rule 10.2 merely requires an applicant to provide a "reasonable explanation" if he or she chooses not to provide information or documentation. Otrompke does not allege that the Committee will not accept the Fifth Amendment privilege as a "reasonable explanation," nor does he allege that the Committee will draw an inference of criminality from an applicant's refusal to comply. To the extent Otrompke claims he is not obligated to provide *any* information to the Committee, his claim is foreclosed by the

long-accepted proposition that he bears the burden of proving his good moral character. *Konisberg*, 366 U.S. at 40-41. Accordingly, Otrompke's Fifth Amendment challenge to Rules 9.1 and 10.2 fails to state a claim upon which relief may be granted.

Because the Defendants are entitled to dismissal on the grounds set forth above, the court need not consider Hill's statute of limitations argument or Madigan's Eleventh Amendment argument.

## CONCLUSION

For the reasons explained in this memorandum opinion, Defendants' "Motion[s] to Dismiss" (Dkt. Nos. 24, 26) are granted as to all of the claims asserted in plaintiff John Joseph Otrompke's First Amended Complaint (Dkt. No. 22). Otrompke's claims pertaining to the Illinois Bar Admission and Illinois Supreme Court Rules in effect in 2004 are dismissed for lack of subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Otrompke's claims pertaining to the Illinois Bar Admission and Illinois Supreme Court Rules currently in effect are dismissed for failure to state a claim upon which relief can be granted. Civil case terminated.

ENTER:

_/s/ James F. Holderman_
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: March 20, 2014